UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

O & E GROWERS, INC.,

                              Plaintiff,

              -vs-                                      07-CV-160-JTC

SELECTIVE INSURANCE COMPANY OF AMERICA,

                              Defendant.
_____

              In this action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201

*et seq.*, plaintiff O & E Growers, Inc. ("O & E") seeks a declaration of rights, obligations and

legal relations under a fire insurance policy issued by defendant Selective Insurance

Company of America ("Selective") covering property located in the Town of Elba, New York

which was destroyed by fire on March 8, 2001.  Plaintiff has moved, and defendant has

cross-moved, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure.  For the reasons that follow, plaintiff's motion is denied, defendant's cross-

motion is granted, and the action is dismissed.

## BACKGROUND

              This is the second case brought in this court by O & E and related entities against

Selective to recover for the damage caused by the March 2001 fire, which completely

destroyed a large building and its contents.  The first action, entitled *Marky's & Sons, Inc.,*

*et al. v. Selective Insurance Company of America*, No. 03-CV-97C, was brought in

February 2003 after Selective denied coverage under the policy.

In the original complaint in the prior action, the plaintiffs sought damages for breach of the insurance contract based on the actual cash value of the building and its contents. Selective asserted an "arson" defense, claiming that the fire was intentionally caused. Shortly before trial, the plaintiffs obtained leave to amend the complaint to include an alternative claim for the full "replacement cost" of the building and its contents, relying on the following policy language:

**3.     Replacement Cost**

a.     Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

. . .

c.     You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days  after the loss or damage.

d.     We will not pay on a replacement cost basis for any loss or damage:

(1)     Until the lost or damaged property is actually repaired or replaced; and

(2)     Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e.     We will not pay more for loss or damage on a replacement cost basis that the least of (1), (2) or (3) . . . , below:

(1)     The Limit of Insurance applicable to the lost or damaged property;

(2)     The cost to replace, on the same premises, the lost or damaged property with other property;

(a)     of comparable material and quality; and

     (b)     Used for the same purpose; or

    (3)     The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(Item 8, Att. 5, p. 17, ¶ G.3).  The replacement cost claim, as set forth in the amended complaint in the prior action, was based on the allegation that Selective's wrongful denial of coverage and its refusal to pay the actual cash value rendered it impossible for the plaintiffs to repair or replace their destroyed property, thereby preventing them from fulfilling the condition precedent of actual repair or replacement under the policy (*see* Item 7, Appx., Ex. 1, ¶¶ 22-24).  *Cf. Zaitchick v. American Motorists Ins. Co.*, 554 F. Supp. 209, 216-17 (S.D.N.Y. 1982) (plaintiffs sustained burden of proving that insurer's refusal to pay actual cash value based on arson defense made it impossible for plaintiffs to fulfill condition precedent, excusing performance of replacement condition), *aff'd*, 742 F.2d 1441 (2d Cir.), *cert. denied*, 464 U.S. 851 (1983).

Trial of the prior action took place before a jury in July 2006.  The jury heard the testimony of several witnesses, including expert witnesses, and viewed photographs and other documentary evidence relating to several issues, including the circumstances of the fire as well as the actual cash value and replacement cost of the building and its contents. After closing arguments, the court instructed the jury on the law pertaining to Selective's arson defense and the plaintiffs' right to recover damages based on either actual cash value or replacement cost.  The jury was given a verdict  sheet addressing the following questions, stipulated to by the parties:

1)    whether Selective had met its burden of proving by clear and convincing evidence that the fire was intentionally caused or procured by the plaintiffs;

2)     if not, what was the replacement cost of the building;

3)    what was the actual cash value of the building and its contents immediately prior to the fire; and

4)    whether the plaintiffs had met their burden of proving by a preponderance of the evidence that, under the circumstances of the case, they were excused from meeting the conditions precedent set forth in the insurance policy and were therefore entitled to recover the cost of replacement of the building.

(*see* Item 7, Appx., Ex. 2).

The jury rendered its verdict on July 17, 2006 by answering these questions in the following manner:

1)    Selective had not met its burden of proving by clear and convincing evidence that the fire was intentionally caused or procured by the plaintiffs;

2)    the total cost of replacing the building was $1,077,705;

3)    the actual cash value of the building immediately prior to the fire was $300,000, and the actual cash value of the contents of the building immediately prior to the fire was $1,054,492; and,

4)    the plaintiffs had not met their burden of proving by a preponderance of the evidence that, under the circumstances of that case, they were

-4-

> excused from meeting the conditions precedent set forth in the policy
>
> and were therefore not entitled to recover the cost of replacement of
>
> the building.

(*See* No. 03-CV-97C, Item 61).

By Order filed July 18, 2006, the Court directed the Clerk to enter judgment in the prior action as follows:

> The affirmative defense of Selective Insurance Company of New York shall be dismissed.  The Clerk is directed to enter judgment in favor of plaintiff in the sum of $300,000 for the actual cash value of the O & E Building at the time of the fire.  The Clerk is also directed to enter judgment in favor of plaintiff in the sum of $1,054,492.00 for the actual cash value of the contents in the O & E  Building.  The cause of action of the plaintiff to be awarded the replacement costs of the O & E Building shall be dismissed.

(*Id.*, Item 60).

Judgment was entered by the Clerk of the Court on July 20,  2006 (*id.*, Item 62). The judgment was later amended to reflect the allowance of prejudgment interest in the amount of $591,100.30, and taxable costs in the amount of $7,940.86, resulting in final judgment in favor of plaintiffs in the amount of $1,953,533.16 (*id.*, Item 71).  No appeal from the judgment was taken, and Selective paid the entire judgment in September 2006.

In November 2006, counsel for O & E sent Selective a letter advising:

> . . . O & E intends to purchase a replacement commercial building located at 795 Wurlitzer Drive, North Tonawanda, New York 14120.  O & E anticipates that the purchase price will exceed the sum of $1.1 million.  You will recall that at trial, the jury awarded the sum of $300,000 as the actual cash value of the O & E building in Elba.  Based upon this award and the further jury award of the actual cash value of the contents (business personal property) to the other two plaintiffs in the case . . . , we calculate that the "holdback" under the above-referenced Selective policy is equal to the sum of $777,706. O & E is prepared to close on the purchase of the Wurlitzer building and thereafter submit a claim under the policy for replacement cost benefits in the full amount of the holdback.

(Item 7, Appx., Ex. 8).  By letter dated February 14, 2007, Selective responded as follows:

> The claim submitted for coverage under the Replacement Cost Provision has been reviewed and it is our opinion that the insured has no right for an additional claim payment.
>
> We base this opinion on the following:
>
> 1.   Judge Curtin ruled "The cause of action of the plaintiff to be awarded the replacement costs of the O & E Building shall be dismissed."
> 2.   The judgment has been paid and no appeal was taken.
> 3.   The insurance contract no longer exists, the company has no obligation or liability to the insured and the insured has no rights under the insurance contract.

(*Id.*, Ex. 9).

O & E then brought this action, seeking a declaration from the court that the policy remains in full force and effect and that, upon actual replacement of the building, O & E may recover up to $777,705 (representing the difference between the amount the jury determined as the replacement cost, $1,077,705, and the amount the jury awarded as the actual cash value, $300,000).  O & E moves for summary judgment in its favor on this claim, and Selective cross-moves for summary judgment on the ground that this action is barred by the doctrine of *res judicata*, as well as by the applicable statute of limitations.

## DISCUSSION

Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties, or those in privity with them, from relitigating claims that were or could have been raised in that action.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  To show that a claim is precluded under this doctrine, a party must demonstrate that (1) the previous

action involved an adjudication on the merits, (2) the previous action involved the same parties or those in privity, and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *See Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000).

It is clear that all three of these elements are present here. There can be no question that the prior action involved a complete adjudication on the merits of the claims presented with respect to the rights and obligations of the parties to the insurance contract, and that the prior action involved the same parties and their privies. O & E contends, however, that the issue of the plaintiffs' right to recover replacement cost under the policy following actual replacement of the O & E Building was not presented to the jury or litigated in the prior action, and could not have been. According to O & E, the only issue that was litigated in the prior action regarding replacement cost was whether the plaintiffs were excused on equitable grounds from complying with the condition precedent of actual repair or replacement under the policy, and that this was the only issue that could have been litigated because the plaintiffs had not met the condition. This contention must be rejected.

The question whether a claim that was not raised in the previous action could have been raised there "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993). As the Second Circuit explained in *Pike*:

> To ascertain whether two actions spring from the same "transaction" or
> "claim," we look to whether the underlying facts are related in time, space,
> origin, or motivation, whether they form a convenient trial unit, and whether
> their treatment as a unit conforms to the parties' expectations or business
> understanding or usage.  As this "same transaction" test indicates, the "could
> have been" language of the third requirement is something of a misnomer.
> The question is . . . whether the claim was sufficiently related to the claims
> that were asserted in the first proceeding that it should have been asserted
> in that proceeding.

*Pike*, 266 F.3d at 91 (internal quotations and citations omitted).

Clearly, the facts underlying O & E's claim for replacement costs in this action are directly related in time, space, origin and motivation to the same transaction that formed the basis of the claims which were fully litigated to judgment upon jury verdict in the previous insurance coverage action.   Indeed, this declaratory judgment action seeks precisely the same relief that the plaintiffs sought in the prior action–declaring the rights and obligations of the parties to the same insurance policy.  The facts essential to the claim made in this action regarding whether the policy provides the right to recover replacement cost were also present in the first action, and were fully addressed during the trial. However, the plaintiffs proceeded on the theory that those facts made it impossible to fulfill the replacement condition, a theory which the jury rejected.  Based upon the jury's finding, the court entered an order containing specific language dismissing the plaintiffs' cause of action for recovery of replacement costs.

Simply put, the plaintiffs did assert a claim for recovery of replacement costs in the prior litigation, albeit based on a different theory (*i.e.*, impossibility of performance of the condition precedent) than the one advanced in this case (*i.e.*, actual replacement of the building).  The jury found that the evidence did not support that theory, and the plaintiffs were instead awarded the actual cash value of the building.  No appeal was taken from the

judgment entered on this verdict, and no relief from the judgment was sought by the parties.

Based on these undisputable facts, the court has little difficulty concluding that O & E's replacement cost claim in this action is "sufficiently related to the claims that were asserted in the first proceeding that it should have been asserted in that proceeding." *Pike*, 266 F.3d at 91. Accordingly, O & E is precluded by the doctrine of *res judicata* from bringing this second coverage action against Selective based upon the same insurance policy under which O & E has already recovered (or shared in the recovery of) the amount of $1,953,533.16 as a result of the judgment entered in the prior action.

In addition, O & E 's claim in this action is barred by the two-year contractual limitation period set forth in the Selective policy, which provides:

### COMMERCIAL PROPERTY CONDITIONS

* * *

**D.   LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1.    There has been full compliance with all of the terms of this Coverage Part; and

2.    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Item 8, Att. 4, Ex. A, p. 26).

Under New York law, a party to a contract ordinarily has six years within which to file a suit for breach of the contract. *See* N.Y.C.P.L.R. § 213(2). However, the law permits contracting parties to agree to shorter limitations periods, which the courts have enforced when reasonable and in writing. *See Penna v. Peerless Ins. Co.*, 510 F. Supp. 2d 199,

203-04 (W.D.N.Y. 2007) (citing *John J. Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 550-51 (1979); *Carat Diamond Corp. v. Underwriters at Lloyd's, London*, 123 A.D.2d 544, 546, 506 N.Y.S.2d 708, 709-10 (1st Dep't 1986).   Insurance policies providing limitations periods as short as twelve months have been found to be reasonable and enforceable, *Carat Diamond Corp.*, 123 A.D.2d at 546, 506 N.Y.S.2d at 710; *see also Blitman Constr. Corp. v. Insurance Co. of North America*, 66 N.Y.2d 820, 823 (1985), as have policies providing that the suit for coverage under the policy must be commenced within a certain time after the date on which the loss occurred (as opposed to the date on when coverage was denied, or some other accrual date).   *See, e.g., Lichter Real Estate No. Three, L.L.C. v Greater N.Y. Ins. Co.*, 43 A.D.3d 366, 366, 841 N.Y.S.2d 93 (1st Dep't 2007).

This second coverage action was brought on March 14, 2007, more than six years after the occurrence of the loss on March 8, 2001.   Accordingly, the court must find the action to be barred by the policy's two-year contractual limitations period, unless plaintiff can demonstrate waiver or estoppel of its application by showing that Selective "made representations or engaged in conduct to mislead the plaintiff into believing that the limitations provision would not be invoked." *Penna*, 510 F. Supp. 2d at 204 (citing cases). In this regard, O & E contends that it should not be bound by the two-year period because it could not have brought this action seeking recovery of replacement costs until the jury made its determination, in July 2006, that Selective was obligated to provide coverage.   In other words, according to O & E, it was Selective's conduct in wrongfully denying coverage that prevented it from asserting the replacement cost claim it seeks to assert in this action.

This contention is refuted by the jury's verdict itself.  As discussed above, the jury specifically found that O & E's obligation to fulfill the condition precedent of repair or replacement had not been frustrated by Selective's refusal to provide coverage.  The clear implication of this finding is that Selective's conduct had no bearing on the ability of the plaintiffs (including O & E) to seek recovery of replacement costs upon fulfilling the condition precedent.  Beyond this, O & E has made no showing that it was somehow otherwise misled by Selective into believing that the limitations provision in the policy would not be invoked.

Based on this analysis, the court finds this action to be barred both by the doctrine of *res judicata*, as well as by the applicable contractual limitations period.  Accordingly, there are no genuine issues as to any material fact for trial, and Selective is entitled to summary judgment as a matter of law pursuant to Rule 56(c).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Item 7) is denied,  defendant's cross-motion for summary judgment (Item 8) is granted, and this action is dismissed.  The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   May 5                  , 2008
p:\pending\2007\07-160.apr3.08

-11-